1  BRETT E. LEWIS (*pro hac vice*)
   JUSTIN MERCER (*pro hac vice*)
2  LEWIS & LIN, LLC
   45 Main Street, Suite 608
3  Brooklyn, NY 11201
   Telephone: (718) 243-9323
4  Facsimile: (718) 243-9326
   Email: brett@iLawco.com
5  Email: justin@iLawco.com

6
   Dylan Ruga (SBN 235969)
7  Ji-In Lee Houck (SBN 280088)
   STALWART LAW GROUP
8  1100 Glendon Ave., 17th Floor
   Los Angeles, CA 90024
9  Telephone:   (310) 954-2000
   Email:  dylan@stalwartlaw.com
10 Email:  jiin@stalwartlaw.com

11

12 Attorneys for Plaintiff
   CERELUX LTD.
13

14

15 **UNITED STATES DISTRICT COURT**

16 **CENTRAL DISTRICT OF CALIFORNIA**

17

| | |
|---|---|
| 18  CERELUX LTD., | Case No.: 2:17-cv-02909-MWF-KS |
| 19         Plaintiff, | |
| 20         vs. | **NOTICE OF DEPOSIT UNDER FED. R. CIV. P. 65(C) & LOCAL RULE 65-10** |
| 21 | |
| 22  YUE SHAO, an individual; DAVID PEARCE, an individual; JAMES EVANS, an individual; PABLO STAFFORINI, an individual; NAMECHEAP, INC., a Delaware corporation; and DOES 1 through 10, inclusive, | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27         Defendants. | |
| 28 | |

**TO THE CLERK OF COURT:**

Plaintiff Cerelux Ltd. ("Plaintiff" or "Cerelux") by its attorneys, hereby submits its deposit of $1,000 to the Clerk this Court pursuant to Fed. R. Civ. P. 65(c) and Local Rule 65-10, in accordance with the Order re *ex parte* Application for Temporary Restrainer Order of the Honorable MICHAEL W. FITZGERALD, U.S. District Judge dated April 21, 2017 [ECF Document 15] ("the Order," a copy of which is annexed hereto as **Exhibit A**).

DATED this 27th day of April, 2017.

Respectfully submitted,
LEWIS & LIN LLC

/s/ Justin Mercer
Justin Mercer

*Attorneys for Plaintiff Cerelux Ltd.*

To: All Parties (via email)

NOTICE OF DEPOSIT UNDER FED. R. CIV. P. 65(c) & L.R. 65-10

# Exhibit A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| **Case No.** | CV 17-02909-MWF (KSx) | **Date:** April 21, 2017 |
| **Title:** | Cerelux Ltd. ~v.~ Yue Shao, et al. | |

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:          Court Reporter:
Rita Sanchez          Not Reported

Attorneys Present for Plaintiff:     Attorneys Present for Defendant:
None Present                         None Present

**Proceedings (In Chambers):**     ORDER RE EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [9]

On April 20, 2017, Plaintiff Cerelux Ltd. ("Cerelux") filed an Ex Parte Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "Application"). (Docket No. 9). Cerelux did not give notice of the Application to Defendants. (Declaration of Justin Mercer ("Mercer Decl.") ¶ 7 (Docket No. 9-2)).

Having carefully read and considered the papers on the Application, the Application is **GRANTED** *in part* for the reasons set forth below.

I.     **BACKGROUND**

The following facts are alleged in the Complaint or included in declarations attached to the Application.

Cerelux is a business that sells and distributes nonprescription drugs, called nootropics, over the internet. (Complaint ¶ 13 (Docket No. 1)). Until recently, Cerelux operated its business at the domain name www.nootropics.com. (*Id.*).

Cerelux's Chief Executive Officer is Marco Vega. (Declaration of Marco Vega ("Vega Decl.") ¶ 1 (Docket No. 9-1)). Vega operated the business from a personal computer that he kept at home, which he never authorized anyone else to use. (*Id.* ¶¶

---
**CIVIL MINUTES—GENERAL**                                                      1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-02909-MWF (KSx)			Date:  April 21, 2017
Title:	Cerelux Ltd. ~v.~ Yue Shao, et al.

14–15).  Vega used Google, Inc.'s email service, Gmail, for both his personal and Cerelux-related email.  (*Id.* ¶ 17).

Cerelux registered its domain name with Namecheap, Inc. ("Namecheap"), using Vega's Gmail email address.  (Compl. ¶ 18).  The Namecheap account was thus accessible via Vega's Gmail address.  (*Id.*).  The Namecheap account and Gmail account were secured by unique passwords known only to Vega, who did not share the passwords with any of Defendants.  (*Id.* ¶ 19).  Vega typically accessed the Gmail and Namecheap accounts from his personal computer.  (*Id.*).

Cerelux alleges that in November 2016, Defendants installed some sort of spying software, likely a key-logging software, on Vega's personal computer to obtain covertly Vega's passwords.  (Compl. ¶¶ 24–26).  On November 22, 2016, Defendants used this information to gain unauthorized access to Cerelux's Namecheap account and steal the domain name.  (*Id.* ¶ 28).  Defendants then transferred the domain name to PublicDomainRegistry ("PDR"), another domain name registration company (sometimes called a "registrar").  (*Id.* ¶ 34).  Cerelux's website was "crashed," that is taken out of operation.  (*Id.*).

On December 7, 2016, Vega noticed that he could no longer log into Cerelux's Namecheap account.  (Vega Decl. ¶ 15).  Accordingly, Vega contacted Namecheap's help service.  (*Id.*).  Namecheap determined that Cerelux was the victim of identity theft.  (Compl. ¶ 29).

On December 8, 2016, Defendants replaced Cerelux's website with a website mirroring that of the prior owner of www.nootropics.com, David Pearce.  (Compl. ¶ 43).  Defendants added to the top of the website a statement from Pearce, claiming that he was "the founder and long-standing website owner" of www.nootropics.com, who "fell victim to a sophisticated fraud . . . ."  (*Id.*).

On December 20, 2016, Cerelux used WHOIS, a free, publicly available directory of the contact information of registered domain name holders, sometimes referred to as registrants.  (Compl. ¶ 44).  The WHOIS records for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 17-02909-MWF (KSx)            Date:  April 21, 2017
Title:       Cerelux Ltd. ~*v.*~ Yue Shao, et al.

www.nootropics.com had been changed to reflect a new registrant, Yue Shao, with an address in Brighton, in the United Kingdom. (*Id.*). Shao's registered address is the same as the address for Pearce. (*Id.* ¶ 45).

On December 22, 2016, Cerelux alleges that Defendants tried to blackmail it. (Compl. ¶ 46). A hijacker contacted Cerelux from the email address m2xy9nqf@sigaint.org and instructed Cerelux to "[p]ick one" of two options: "1) Public statements ceasing operations. 2) I dump your data." (Vega Decl., Ex. H (Docket No. 9-10)). Vega avers that when he refused the hijacker's demands, Defendants released at least some of Cerelux's customer data to a text sharing website. (Compl. ¶ 47). In response, Cerelux filed a claim with the Action Fraud department of the United Kingdom police. (*Id.*).

Meanwhile, Cerelux had continued trying to regain control of its domain name. From other allegations, the Court infers that while Cerelux disputed the transfer, PDR placed the domain name in lock status. (*See, e.g.*, Compl. ¶¶ 53, 55). Namecheap referred Cerelux's allegations to the Internet Corporation for Assigned Names and Numbers' ("ICANN") Transfer Dispute Resolution Policy ("TDRP"). (*Id.* ¶ 50). Pursuant to the resolution of the TDRP process, it was determined that the transfer of www.nootropics.com from Namecheap to PDR was valid because it was "authorized by the listed registrant at the time of transfer." (Vega Decl., Ex. I (Docket No. 9-11)). Namecheap could not at that point continue to intervene in the dispute over the domain name. (*Id.*).

On April 6, 2017, counsel for Cerelux wrote to Namecheap and PDR to ask PDR to either (1) return the domain name to Cerelux under indemnification from Namecheap or (2) keep the transfer lock in place for another 14 days, to allow time for Cerelux to file its Complaint. (Compl. ¶ 53). Namecheap refused to indemnify PDR for purposes of returning the domain name to Cerelux. (*Id.* ¶ 54). On April 9, 2017, PDR removed the lock status. (*Id.* ¶ 55). At that point, Defendants once again took the website offline; as of the filing of the Complaint, Cerelux's website was still down. (*Id.* ¶ 56). On April 10, 2017, Defendants began redirecting visitors to www.nootropics.com to Pearce's website, www.nootropic.com (singular). (*Id.* ¶ 57).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-02909-MWF (KSx)	Date:  April 21, 2017
Title:	Cerelux Ltd. ~v.~ Yue Shao, et al.

On April 16, 2017, PDR informed Cerelux that the domain name had been transferred to a third registrar, GoDaddy.  (Compl. ¶ 59).  After the transfer, the WHOIS records were changed to reflect that the registrant for www.nootropics.com is Pearce.  (*Id.* ¶ 60).

## II.     DISCUSSION

### A.     Propriety of Temporary Restraining Order

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions, and courts apply the same standards to both.  *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A plaintiff seeking injunctive relief must show that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his favor; and (4) an injunction is in the public interest.  *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008)).

A plaintiff must "make a showing on all four prongs."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Ninth Circuit employs the "serious questions" version of the "sliding scale" approach when applying the four-element *Winter* test.  *Id.* at 1134.  "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.* at 1135.

The Court concludes that the four prongs of the *Winter* test are met.

***First***, assuming that the facts as pled in the Complaint are found to be true, Cerelux will have at least made out a substantial showing that Defendants violated both the Electronic Communications Privacy Act, 18 U.S.C. §§ 25100 *et seq.*, and the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq*.  The Electronic

---

**CIVIL MINUTES—GENERAL**	4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-02909-MWF (KSx)                     Date:  April 21, 2017
Title:    Cerelux Ltd. ~v.~ Yue Shao, et al.

Communications Privacy Act prohibits, among other things, the interception and disclosure of electronic communications, including email.  18 U.S.C. § 2511(a).  The Stored Communications act prohibits, among other things, accessing "without authorization a facility through which an electronic communication service is provided" and thereby obtaining the electronic communications stored in the facility. 18 U.S.C. § 2701(a).  Cerelux alleges that Defendants accessed its primary business email address without authorization and intercepted and obtained the emails contained therein.  Cerelux has provided the Court with sufficient circumstantial evidence of Defendants' actions, including emails indicating that Defendants used the information contained in Cerelux's email to hijack its website and transfer its domain name, to permit the Court to conclude at this stage that Cerelux has a likelihood of success on the merits of these claims.

  *Second*, Cerelux is likely to suffer irreparable harm if Defendants are permitted to continue exercising complete control over Cerelux's website.  Cerelux operates a business.  Each day that the website is down and Cerelux's customers are redirected to Defendants' website instead, Cerelux will lose the trust of its customers and its allegedly good business reputation.  *See Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm.") (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001)).  Additionally, if Defendants are able to disguise themselves as Cerelux, or an entity affiliated with Cerelux, Defendants may take the personal information of Cerelux's customers for Defendants' own use.

  *Third*, the balance of the equities favors Cerelux.  Requiring Defendants to transfer a domain name they do not rightfully own back to its proper owners does them no harm, while allowing the domain name to stay in Defendants' hands would continue subjecting Cerelux to the harms outlined above.

  This conclusion is strengthened by the terms of the Temporary Restraining Order ("TRO") that the Court will issue, which differs in some respects from the proposed order submitted by Cerelux.  The Court has eliminated the language

_____
**CIVIL MINUTES—GENERAL**                                             5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 17-02909-MWF (KSx)			Date:  April 21, 2017
Title:	Cerelux Ltd. ~v.~ Yue Shao, et al.

permitting Cerelux "full access to all functionality of the Domain Name" including freedom "to use the Domain Name in any and all other ways, including but not limited to, the entirety of its prior use of the Domain Name."  (Proposed Order (Docket No. 9-15)).  Instead, after the domain name is transferred to Cerelux pursuant to the terms of the TRO, Cerelux may not make any use of the website, nor may it transfer the website, until the hearing on the OSC, as discussed in more detail below.  Transferring the website back to Cerelux will prevent any defamatory language or similar reputational damage to the business, and will prevent Defendants from continuing to harvest the confidential personal information of Cerelux's customers.  However, until the Court has a clearer idea of the events underlying this action, and has had the opportunity to hear from both sides, it is not appropriate to restore to Cerelux the full functionality of the website.

*Fourth*, a temporary restraining order preventing Defendants from transferring the website yet again is in the public interest.  Preventing Defendant from harvesting the personal information of Cerelux's customers, who are third parties to this suit, favors the public interest.  *See also Savin Corp. v. Rayne*, No. 00-CV-11728 PBS, 2001 WL 34815751, at *10 (D. Mass. Mar. 26, 2001) ("[N]o public interest is served by allowing individuals to hold such domain names hostage.").

Accordingly, the Court concludes that a temporary restraining order is appropriate until both parties can be heard on the issue of further preliminary relief.

Cerelux requested the TRO to be issued without notice to Defendants.  Although GoDaddy has agreed to place a lock on the domain name, Cerelux's email servers are still under Defendants' control.  Cerelux fears that, if given notice of an impending TRO, Defendants would take adverse measures — including releasing more confidential client information or destroying Cerelux's email servers — in anticipation of entry of the TRO.  Because Cerelux has stated specific and convincing facts that clearly show that notice could result in immediate and irreparable loss or damage to Cerelux and its customers, the Court concludes that it is appropriate to issue the TRO without notice to Defendants.  *See* Fed. R. Civ. P. 65(b)(1).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-02909-MWF (KSx)**                **Date:  April 21, 2017**
**Title:**     Cerelux Ltd. ~v.~ Yue Shao, et al.

### B.    Issuance of a Bond and Service to Defendants

Cerelux additionally requests that the Court waive Rule 65(c)'s bond requirement.  While the Court *may* waive the bond requirement, *see* O'Connell and Stevenson, Prac. Guide Fed. Civ. Proc. Before Trial (Nat Ed. 2017) Ch. 13-D(1)(j) ("Unless specifically waived by the court, a bond is always required upon issuance of a TRO in federal court."), it is not appropriate to waive bond in this instance.  There is at least a possibility that the domain name is in fact properly registered to Defendants, and it is Cerelux who seeks to wrongfully take control of the domain using the power of the Courts.  The express purpose of the bond requirement is "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  Because that is a possibility here, the Court will enter a bond.  The Court considers a bond of $1,000 to be an appropriate sum to effectuate the purposes of the Rule.

Finally, Cerelux requests leave to effect service of the Summons, Complaint, and all relevant papers supporting its application for the TRO by alternative means pursuant to Rule 4(f).  Rule 4(f) permits service of individuals not in the United States by any means "not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3).  "[S]ervice of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.'  It is merely one means among several which enables service of process on an international defendant." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) (quoting *Forum Fin. Group, LLC v. President & Fellows*, 199 F.R.D. 22, 23 (D. Me. 2001)).

Cerelux requests that it be permitted to serve Defendants via email.  Service of process under Rule 4(f)(3) must meet constitutional due process requirements.  *Id.* at 1016.  "To meet this requirement, the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 1016–17 (*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Cerelux explains that Defendants' emails are the only reliable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 17-02909-MWF (KSx) | Date: April 21, 2017 |
| Title: Cerelux Ltd. ~*v.*~ Yue Shao, et al. | |

contacts that Cerelux has, and states that Defendants have used and responded to messages directed at these email addresses in the past. (App. at 14–15).

The Court will permit alternative service at Defendants' email addresses. The Court additionally requires Cerelux to serve Pearce and Shao, via Federal Express or a similar service, at the Brighton address listed in the WHOIS registration.

## III. CONCLUSION

For the foregoing reasons, the Application is **GRANTED** *in part.* Cerelux shall post a bond of **$1,000** for the domain name at issue.

The Temporary Restraining Order shall be issued separately. The parties are **ORDERED** to appear, either in person or telephonically, in Courtroom 5A of the First Street Courthouse for the United States District Court, Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, on **May 2, 2017 at 10:00 a.m.** Defendants shall have until **April 27, 2017**, to file any opposing papers. At the hearing, the parties are further **ORDERED** to show cause why the interim relief set out in the separately-filed Temporary Restraining Order should not be extended in a similar preliminary injunction pending trial.

Cerelux is further **ORDERED** to show cause on or before **April 27, 2017**:

1. Why the Court has personal jurisdiction over each of the named Defendants;

2. Why this action is consistent with ICANN's arbitration procedures, including TDRP and the Uniform Domain Name Dispute Resolution Policy ("UDRP").

IT IS SO ORDERED.